UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| CARRIE E. STILLWELL, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 3:17-CV-437-DCP |
| ANDREW M. SAUL,[1] Acting Commissioner of Social Security, | ) ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 73 of the Federal Rules of Civil Procedure, and the consent of the parties [Doc. 21]. Now before the Court are Plaintiff's Motion for Summary Judgment and Memorandum in Support [Docs. 24 & 25] and Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 27 & 28]. Carrie E. Stillwell ("Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("the ALJ"), the final decision of Defendant Andrew M. Saul ("the Commissioner"). For the reasons that follow, the Court will **DENY** Plaintiff's motion and **GRANT** the Commissioner's motion.

**I.  PROCEDURAL HISTORY**

On September 13, 2010, Plaintiff filed an application for supplemental security income benefits pursuant to Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.*, claiming an

---

[1] Andrew M. Saul was sworn in as the Commissioner of Social Security on June 17, 2019, during the pendency of this case. Therefore, pursuant to Federal Rule of Civil Procedure 25(d), Andrew M. Saul is substituted as the Defendant in this case.

amended alleged onset date of January 4, 2012. [Tr. 1 at 26; Tr. 2 at 16].[2] Plaintiff also filed a concurrent application for disability insurance benefits pursuant to Title II of the Social Security Act; however, Plaintiff states that she is not appealing the outcome of her Title II claim. [Doc. 25 at 1].

On April 15, 2015, ALJ Jim Beeby issued a decision denying Plaintiff's claim for supplemental security income benefits. [Tr. 2 at 38–52]. The Appeals Council subsequently granted Plaintiff's request for review, and remanded the case on December 22, 2015, for the ALJ to address Plaintiff's objection to the vocational expert, Dr. J.D. Flynn, and to re-assess the weight given to the third-party function report from Plaintiff's husband. [Tr. 2 at 57–60]. A second hearing was held on July 18, 2016. [Tr. 3 at 621–42]. On November 1, 2016, the ALJ found that Plaintiff was not disabled. [Tr. 2 at 16–33]. On August 18, 2017, the Appeals Council denied Plaintiff's request for review [Tr. 2 at 4–7], making the ALJ's decision the final decision of the Commissioner.

Having exhausted her administrative remedies, Plaintiff filed a Complaint with this Court on October 3, 2017, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act. [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## II. ALJ FINDINGS

The ALJ made the following findings:

> 1. The claimant has not engaged in substantial gainful activity since

---

[2] The Commissioner filed a Notice of Manual Filing [Doc. 15], stating that the administrative record has only been submitted manually because a complete copy is not available in an electronic format. The Transcript was subsequently filed in four binders. Therefore, the Court has adopted the method of citation utilized by the parties—first citing to the binder number, and then to the respective page of that binder.

January 4, 2012, the amended onset date (20 CFR 416.971 *et seq*.).

2. The claimant has the following severe impairments, the combination of which is severe: super morbid obesity; degenerative disc disease; knee disorder; hypertension; hyperlipidemia; hypothyroidism (Grave's disease); depressive disorder; and anxiety disorder (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform less than the full range of sedentary work as defined in 20 CFR 416.967(a). The claimant can lift and carry, push and pull up to 10 pounds occasionally, and up to 10 pounds frequently. With normal breaks in an eight-hour day, she can sit for six hours, and stand and walk for three hours; can never climb ladders or scaffolds; can never crouch, or crawl; can occasionally climb ramps and stairs; and can occasionally balance, stoop, and kneel. The claimant can understand and remember simple, detailed and multi-step tasks, but not executive level tasks; can concentrate and persist for these tasks; can interact appropriately with co-workers and supervisors on an occasional basis, but interaction with the public should be on an occasional one-on-one basis; and can adapt to infrequent change.

5. The claimant has no past relevant work (20 CFR 416.965).

6. The claimant was born on August 27, 1975 and was 35 years old, which is defined as a younger individual age 18–44, on the date the application was filed (20 CFR 416.963).

7. The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969, and 416.969(a)).

> 10. I have essentially complied with the Appeals Council remand order, set out in its entirety in exhibit B15B, by answering the representative's objection regarding the vocational expert, addressing the husband's third party function report, and holding a hearing where the claimant had an opportunity to testify, with vocational expert testimony.
>
> 11. The claimant has not been under a disability, as defined in the Social Security Act, since January 4, 2012, the amended onset date (20 CFR 416.920(g)).

[Tr. 2 at 18–33].

## III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762,

773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y. of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted).

## IV. DISABILITY ELIGIBILITY

"Disability" is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). A claimant will only be considered disabled:

> if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

§§ 423(d)(2)(A) and 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5

> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is "based on all the relevant medical and other evidence in your case record." 20 C.F.R. §§ 404.1520(a)(4), -(e) and 416.920(a)(4), -(e). An RFC is the most a claimant can do despite her limitations. 20 C.F.R. §§ 404.1545(a)(1) and 416.945(a)(1).

The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

## V. ANALYSIS

Plaintiff claims that the ALJ failed to properly consider her morbid obesity under Social Security Ruling 02-1p in the RFC determination. [Doc. 25 at 13–19]. First, Plaintiff asserts that the ALJ only "discussed the concept of obesity in general terms, and he failed to identify [her] level of obesity (BMI), but rather, just noted some dates on which she was weighed." [*Id.* at 17]. Plaintiff maintains that she consistently had a BMI of at least 75, which constitutes the third level of obesity under SSR 02-1p, and puts her at the greatest risk for developing obesity-related impairments. Further, Plaintiff asserts that she also suffers from type II diabetes mellitus, hypertension, Grave's disease, and depression, which in conjunction with her obesity, limit her physical and mental abilities.

Plaintiff also contends that the ALJ "selectively relied upon portions of the record to discredit [her] subjective complaints and failed to adequately consider the objective evidence" related to her obesity. [*Id.* at 14]. Plaintiff challenges the ALJ's characterization that Plaintiff "failed to follow-up on recommendations made by [her] treating doctor" [Tr. 2 at 24], as well as that she "never sought or received treatment from a specialist" or entered a weight loss treatment or program [Tr. 2 at 25], in order to find that her symptoms may not have been as serious as alleged. Accordingly, Plaintiff claims that the ALJ should have considered the acceptable reasons she provided for failing to comply with her treatment, and that these treatments were recommended, but not prescribed.

The Commissioner maintains that the ALJ properly considered Plaintiff's obesity, as the ALJ found Plaintiff's obesity to be a severe impairment, noted that he evaluated the impairment in accordance with Social Security Ruling 02-1p, and incorporated opinions that considered Plaintiff's obesity. [Doc. 28 at 14–15]. Further, the Commissioner asserts that the ALJ properly considered Plaintiff's financial constraints and inability to afford greater treatment, while also noting when medical providers detailed that Plaintiff was not following their instructions. [*Id.* at 15–16].

Social Security Ruling 02-1p instructs ALJs to consider the effects obesity may have on a disability claimant throughout the sequential evaluation. 2002 WL 34686281, at *4–7 (Sept. 12, 2002).[3] At step two, obesity will be considered "a 'severe' impairment when, alone or in combination with another medically determinable physical or mental impairment(s), it

---

[3] SSR 02-1p was rescinded and replaced by Social Security Ruling 19-2p, effective May 20, 2019. *See* 2019 WL 2161798 (May 20, 2019). Here, because Plaintiff filed her claim prior to this date, SSR 02-1p is still applicable in this case. *See, e.g.*, *Long v. Comm'r of Soc. Sec.*, No. 2:18-CV-00597, 2019 WL 3406431, at *10 (S.D. Ohio July 29, 2019).

significantly limits an individual's physical or mental ability to do basic work activities." *Id.* at *4. SSR 02-1p classifies individuals with regard to obesity by considering their Body Mass Index ("BMI"). *Id.* at *2. Individuals with a BMI greater than or equal to 30 are considered "obese," with those above a BMI of 40 having the most "extreme" type of obesity with the greatest risk for developing obesity-related impairments. *Id.* Nevertheless, "[t]here is no specific level of weight or BMI that equates with a 'severe' or a 'not severe' impairment." *Id.* at *4. An ALJ is tasked with conducting "an individualized assessment of the impact of obesity on an individual's functioning when deciding whether the impairment is severe." *Id.*

The Sixth Circuit has held, however, that SSR 02-1p does not offer "any particular procedural mode of analysis for obese disability claimants." *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 443 (6th Cir. 2010) (quoting *Bledsoe v. Barnhart*, 165 F. App'x 408, 412 (6th Cir. 2006)). Rather, it provides that "obesity, in combination with other impairments, 'may' increase the severity of other limitations." *Id.* (quoting *Bledsoe*, 165 F. App'x at 412). Ultimately, obesity should be considered on a case-by-case basis because it "may or may not increase the severity or functional limitations of the other impairment." Soc. Sec. Rul. 02-1p, 2002 WL 34686281, at *6 (Sept. 12, 2002).

In the present case, the ALJ found Plaintiff's super morbid obesity to be a severe impairment at step two. [Tr. 2 at 19]. The ALJ then reviewed Plaintiff's testimony that her back and knees "are the most severe things that keep her from working," that she was attempting to limit her carbs and sugar, and that she was unable to continue to walk through her neighborhood due to her back pain. [Tr. 2 at 22]. The ALJ discussed Plaintiff's treatment with Cherokee Health Systems, including for chronic morbid obesity and treatment of her type II diabetes mellitus. [Tr. 2 at 23]. Additionally, the ALJ detailed a March 27, 2014 treatment note that

8

Plaintiff's "large body habitus contributed to [her] symptoms," while finding that treatment has been generally successful in controlling Plaintiff's symptoms. [Tr. 2 at 23–24]. The ALJ also reviewed that treatment notes indicated that weight loss was encouraged on January 12, 2015. [Tr. 2 at 24].

The ALJ then directly addressed Plaintiff's obesity, and stated that "the adverse impact of [Plaintiff's] obesity on her limitations has been considered in conjunction with the impact of all her impairments," citing Social Security Ruling 02-1p. [Tr. 2 at 25]. The ALJ noted that Plaintiff testified at the hearing that she was five feet, six inches tall and weighed around 491 pounds, as well as that her weight was 506 pounds on May 4, 2012 and 487.2 pounds on December 23, 2014. [*Id.*]. Lastly, the ALJ detailed that a body composition analysis was performed at Foothills Weight Loss Specialists on January 4, 2012, but that "[t]here is nothing further in the medical evidence showing that she entered a weight loss program or participated in any weight loss treatment with this or any other program." [*Id.*].

Accordingly, the Court finds that the ALJ appropriately considered Plaintiff's super morbid obesity under Social Security Ruling 02-1p. First, the ALJ found Plaintiff's obesity to be a severe impairment, and specifically stated that he considered the adverse impact of her obesity under Social Security Ruling 02-1p. The ALJ reviewed Plaintiff's weight at several relevant points, as well as her function report and testimony about her impairments. Ultimately, "[a]n ALJ's explicit discussion of the plaintiff's obesity indicates sufficient consideration of [her] obesity." *Swafford v. Berryhill*, No. 1:18-CV-5, 2019 WL 1332368, at *3 (E.D. Tenn. Mar. 25, 2019) (citing *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 443 (6th Cir. 2010)).

Further, the ALJ incorporated several medical opinions that specifically reviewed Plaintiff's obesity into the RFC determination. In *Bledsoe*, the Sixth Circuit offered practical

9

assistance in applying SSR 02-01p, finding that the ALJ had properly considered the claimant's obesity by making "explicit mention of [the claimant's] obesity in his finding of facts" and by "credit[ing] an expert's report that considers obesity." *Bledsoe v. Barnhart*, 165 F. App'x 408, 412 (6th Cir. 2006); *see also Coldiron*, 391 F. App'x at 443 ("Given the ALJ's discussion of Coldiron's obesity throughout his findings of fact and the ALJ's use of RFCs from physicians who explicitly considered Coldiron's obesity, we find that the ALJ adequately accounted for the effect that obesity has on Coldiron's ability to perform sedentary work.").

The ALJ reviewed the opinion of consultative examiner, Jeffrey Summers, M.D., who examined Plaintiff on January 14, 2012. [Tr. 2 at 29]. The ALJ noted that Dr. Summers diagnosed osteoarthritis, super morbid obesity, hypertension-uncontrolled, and history of Graves' disease. [*Id.*]; *see* [Tr. 1 at 388]. Dr. Summers noted on examination that Plaintiff had a decrease in range of motion at her lumbar spine and both knees, as well as an abnormal gait. [*Id.*]. Therefore, Dr. Summers found that Plaintiff would have difficulty bending, stooping, kneeling, squatting, crouching, crawling, climbing, and lifting greater than 20 pounds; that Plaintiff would have difficulty standing and walking for greater than one hour continuously or three hours in a single work day; but that she would be capable of working from a seating position for eight hours in a single work day. [*Id.*].

The ALJ noted that Dr. Summers performed an additional physical consultative examination on May 4, 2012. [Tr. 2 at 29]. Accordingly, Dr. Summers opined that Plaintiff could frequently lift and carry up to ten pounds, and occasionally lift and carry up to twenty pounds. [Tr. 1 at 390]. Further, Dr. Summers opined that Plaintiff could sit for three hours at one time without interruption, but for six hours total in an eight-hour workday; and that Plaintiff could stand or walk for one hour without interruption, but for three hours total in an eight-hour

workday. [Tr. 1 at 391]. Lastly, Dr. Summers found that Plaintiff could occasionally climb stairs and ramps, stoop, kneel, or crouch, but that Plaintiff could never climb ladders or scaffolds, balance, or crawl. [Tr. 1 at 393].

In the disability decision, the ALJ reviewed Dr. Summers' opinions in length, including noting the diagnosis of super morbid obesity and functional limitations related to Plaintiff's chronic back and knee pain, with reduced range of motion and an abnormal gait. [Tr. 2 at 29]. The ALJ found that "Dr. Summers' determinations and conclusions are credible and are supported by objective medical findings that are consistent with the record as a whole," accepted these opinions "with regard to the claimant's residual functional capacity, and assigned them "some weight." [*Id.*]. However, the ALJ noted that Dr. Summers was not specific regarding the degree of opined postural limitations. [*Id.*].

Additionally, the ALJ assigned some weight to the opinions of the nonexamining state agency medical consultants who reviewed the medical record with respect to Plaintiff's obesity. [Tr. 2 at 30]. On February 5, 2013, nonexamining state agency physician Michael Ryan, M.D. noted that Plaintiff's morbid obesity was the primary diagnosis [Tr. 2 at 125], and opined that Plaintiff could perform a range of light work, stand and walk for at least two hours, and occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs [Tr. 2 at 125–33]. On July 8, 2013 and September 3, 2013, Celia Gulbenk, M.D. reviewed the evidence of record at the reconsideration level of the agency's review and opined similar limitations, except that Plaintiff could never crouch, crawl, or climb ladders, ropes or scaffolds. [Tr. 2 at 264, 278].

The ALJ reviewed the opinions of the nonexamining state agency physicians and afforded them some weight. With respect to the opined standing and walking limitations, the ALJ noted that he deferred to limitations opined in Dr. Summers' opinion because Dr. Summers

11

was able to examine Plaintiff. [Tr. 2 at 30]. However, "[o]ut of an abundance of caution, and treating the claimant's testimony in the most favorable light," the ALJ adopted the more restrictive postural limitations set forth in Dr. Gulbenk's opinion. [*Id.*].

Ultimately, "by utilizing the opinions of these physicians in fashioning [Plaintiff's] RFC, the ALJ incorporated the effect that obesity has on [Plaintiff's] ability to work into the RFC he constructed." *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 443 (6th Cir. 2010). The ALJ explicitly discussed Plaintiff's obesity, and Plaintiff fails to point to any supporting case law requiring the ALJ to specifically detail her level of obesity under Social Security Ruling 02-1p.

Plaintiff also claims, however, that the ALJ selectively discussed the medical record and improperly considered her failure to participate in a weight loss program, while failing to incorporate her "acceptable reasons" for failing to follow treatment. [Doc. 25 at 18]. Under 20 C.F.R. § 416.930, a claimant can set forth acceptable reasons for their failure to follow prescribed treatment. Social Security Ruling 96–7p provides that an ALJ "must not draw any inferences about an individual's symptoms . . . from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide," such as that an "individual may be unable to afford treatment and may not have access to free or low-cost medical services." 1996 WL 374186, at *7–8 (July 2, 1996).

In the disability decision, the ALJ found that while Plaintiff's "medically determinable impairments could reasonably be expected to cause *some of* the alleged symptoms," Plaintiff's statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." [Tr. 2 at 22]. Later, when discussing the medical record, the ALJ noted that Plaintiff "failed to follow-up on recommendations made by [her] treating doctor, suggesting that the symptoms may not have

been as serious as alleged." [Tr. 2 at 24]. The ALJ discussed treatment notes from Cherokee Health Systems on May 6, 2016 indicating that Plaintiff was "non-compliant with medications, checking blood sugars, and lifestyle," and that Plaintiff was subsequently unwilling to start insulin treatments. [*Id.*]. The ALJ also noted that weight loss was encouraged during Plaintiff's treatment at Cherokee Health Systems. [*Id.*]. Additionally, the ALJ found that Plaintiff "cancelled or failed to show up for her appointments on a number of occasions" when discussing Plaintiff's mental health treatment. [Tr. 2 at 27].

Plaintiff admits that the ALJ noted in his decision that she could not afford her medications [Tr. 2 at 28], missed appointments due to transportation issues [Tr. 2 at 26], and declined physical therapy because she was uninsured [Tr. 2 at 25]. Plaintiff maintains, however, that the ALJ "did not incorporate" these "acceptable reasons" into his analysis. [Doc. 25 at 18].

In the disability decision, the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her alleged symptoms were not entirely consistent with the medical evidence for several reasons—not solely due to her failure to follow prescribed treatment. The ALJ reviewed Plaintiff's testimony and activities of daily living, her treatment records, and several medical opinions regarding her functional limitations. Further, Social Security Ruling 82-59, which was codified in 20 C.F.R. § 416.930, provides that "[i]n addition to using evidence of noncompliance to support a finding of a failure to follow prescribed treatment, an ALJ may also use such evidence to assess a plaintiff's credibility regarding the severity of her symptoms." *Albadiry v. Colvin*, No. 3:13-0840, 2014 WL 4533349, at *16 (M.D. Tenn. Sept. 11, 2014), *report and recommendation adopted sub nom.*, *Albadiry v. Soc. Sec. Admin.*, 2014 WL 4960949 (M.D. Tenn. Sept. 30, 2014); *see also Ranellucci v. Astrue*, No. 3:11-CV-00640, 2012 WL 4484922, at *10 (M.D. Tenn. Sept. 27, 2012) ("Furthermore, it was proper

for ALJ Roberts to use Plaintiff's noncompliance with treatment as part of her credibility assessment.").

Plaintiff also cites to *Shilo v. Commissioner of Social Security*, where the Sixth Circuit found that the claimant's "inability or alleged lack of effort to lose weight does not reasonably lead to the conclusion that his conditions are not limiting," as the "ALJ cannot penalize [the claimant] for failing to lose weight," and that the claimant offered several valid justifications for failing to complete physical therapy. 600 F. App'x 956, 963–64 (6th Cir. 2015). In the present case, the ALJ's analysis regarding Plaintiff's failure to follow treatment does not center around Plaintiff's failure to lose weight, but rather her failure to comply with recommendations for treatment of her type 2 diabetes mellitus, including taking medications, checking blood sugar, and lifestyle changes. The ALJ also did not find that Plaintiff's failure to lose weight was a justification for discrediting her alleged symptoms and functional impairments. Additionally, "in *Shilo*, the ALJ's failure to fully evaluate the claimant's obesity was intertwined with his rejection of the treating source opinion, which the court of appeals also criticized. Here, there is no treating source opinion and no medical opinion indicating that plaintiff had greater functional limitations than determined by the ALJ." *See Stockdale v. Comm'r of Soc. Sec.*, No. 1:16-CV-2304, 2017 WL 3017217, at *11 (N.D. Ohio June 19, 2017), *report and recommendation adopted by*, 2017 WL 3008487 (N.D. Ohio July 14, 2017).

Ultimately, the ALJ appropriately evaluated Plaintiff's obesity by incorporating the RFCs contained in medical opinions from physicians who reviewed Plaintiff's obesity. Further, the ALJ explicitly discussed Plaintiff's obesity in the disability decision. While Plaintiff claims that the ALJ selectively discussed the medical record, Plaintiff does not specify which opined functional limitations or portions of the medical record that the ALJ ignored. The ALJ noted

14

Plaintiff's failure to follow up on recommendations from her treating doctor, but did not base his evaluation of Plaintiff's obesity on her failure to lose weight. In the disability decision, the ALJ incorporated a more restrictive RFC than opined by either Dr. Summers or the nonexamining state agency physicians. Therefore, the Court finds that the ALJ appropriately "explain[ed] how [he] reached [his] conclusion on whether obesity caused any physical or mental limitations," as explained in Social Security Ruling 02-1p. 2002 WL 34686281, at *4–7 (Sept. 12, 2002).

## V. CONCLUSION

Based on the foregoing, Plaintiff's Motion for Summary Judgment [**Doc. 24**] will be **DENIED**, and the Commissioner's Motion for Summary Judgment [**Doc. 27**] will be **GRANTED**. The decision of the Commissioner will be **AFFIRMED**. The Clerk of Court will be **DIRECTED** to close this case.

ORDER ACCORDINGLY.

Debra C. Poplin
United States Magistrate Judge